Good morning all. Our first case this morning is the United States v. Contreras. Mr. Jensen. Your Honors, I represent the appellant. This was a conditional plea of guilty. We had a sentencing. He is sentenced and we are appealing the motion to suppress. The, trying to get this, trying to get it in sync here. Can we, can we be of any assistance Mr. Jensen? I mean we can raise that. No, no, this is fine, Your Honor. That fits perfect. Do you want to pull the mic perhaps a little closer so we can reach it? Your Honor, the defendant in this case was arrested for a narcotic offense. The appeal in this case relates to the motion to suppress that was filed at, before trial, or at the trial didn't occur, and the, and the rulings of the judge. Now I understand that the court must find that the district court clearly erred and must suppress the evidence and they have to find that they clearly erred. The fact of the matter is the, it's unusual to argue the facts in these cases and I understand that, but I think that this is a very rare case where the facts militate for suppression. I believe that the defendant in this case was a victim of an illegal search. There was a search of a garage and there was a search of a house. Mr. Jensen, let me ask you this. If I'm in the habit of leaving my garage door open, can the police stand across the street and look inside? The police can stand across the street and look inside. In this case, and this is why this is an unusual appeal, in this case it is our contention that the officer who testified to the things he saw didn't see them. The fact, it's a fact-intensive case and again I understand the issue with regard to facts, but he testified in four different occasions to four different things. He testified at a, he testified at a preliminary hearing, a sworn complaint he filed where he said that the, he was holding, the man was holding a white bag and that they entered the garage and then he dropped the bag. Seven hours later he filed another report saying that he actually witnessed a hand-to-hand narcotic exchange. Further on later in front of the grand jury, he was holding a white bag but now said the bag actually broke open and the shoebox fell out. So that Your Honor also understand that it's in a footnote in our brief and in the container for the narcotics and the tape that was holding the shoebox closed were missing. But isn't the factual account unchallengeable? It's a credibility determination. I understand that and I would not normally, and I have a lot of respect for this judge especially, but I would not normally challenge a credibility situation. But we have a man who got 14 years in jail and he, and it was our contention, it was then and still is now, that basically the basis of this witness is just incredible and that he should not have been believed. And again, as much as I respect the judge, I think his finding relative to this particular factual situation was just wrong and I felt it was important that at least we raise it, Your Honor. And I understand the look at this, if you look at the factual basis of this officer's testimony, if you read the testimony, if you read how incredible the testimony is and how inconsistent it is, time after time after time, I think that in light of that they just did not have probable cause to go into the garage. And rather than argue the facts ad infinitum, especially in the light of the standard that you use, I think it's necessary for someone to read these facts and if they reach the judge exercises discretion, so be it. But it is our opinion that he didn't properly exercise his discretion. It is our opinion, and knowing the burdens we have to go over in this case, that at least Your Honor's on this appeal, an appeal that's, you know, an important more so in the light of the sentence he received, that Your Honor's take a look at it or someone takes a look at it to see exactly what happened in this case and see if it's consistent with the statute. But I didn't think it was, I was performing my responsibility if I didn't bring it to your attention. And so with regard to that issue, we wrote a 50-page brief and it's out there. And if Your Honor's feel that it should be read or in the context that I'm presenting it, fine. If Your Honor doesn't, fine. I understand what the rules are, but I think it was appropriate for us to raise it, because I don't recall ever raising this on appeal before. Mr. Jensen, do you want to rely solely on the issue of the credibility? No, because we have another issue. Yeah. The second issue, and I'll briefly state it, I don't have much time, but essentially what happened was, is the police officers came into the garage, made whatever things they did, and broke into the house. There was no reason for them to break in the house, there was no, they didn't know these people from before, there was no reason that they should be afraid. The door was closed to the house, they could have gotten a search warrant for the house, but they didn't. Now they did find some contraband in the basement, which added to the sentence in this case. They also heard a person. I'm sorry? One of the men said he heard a woman, another one said he didn't, he heard rustling. And there was someone in the They broke open the door, came into the house. And along with that, and that goes to the issue of the statement that the defendant made. As soon as they break into the house, as soon as they force, bring the man into the house, pursuant to that illegal search, and by the way, I apologize to your honor, there was no basis. The judge never ruled on whether the, there is no ruling factually as to whether they had a right to enter the house. The judge just, his honor, just I think it's important, if for no other reason, that the court failed in this case to make factual findings regarding the lawful of the, the lawfulness of the initial warrant, warrantless entry into the premises, the residence, as opposed to the garage. No finding at all, he just assumed that it was protective, never made a reason, never dealt with the issue as to being a noise in the hearing rustling, never dealt with the issue as to who in fact heard what they said they heard, and just went on to assume that because they went into the house, they ultimately consented, the consent vitiated whatever occurred getting into the house. Now, in addition to that, the, and I think it's important They only searched for people, they didn't search for any evidence in there. You have a, but it's going, they say they only search for people, but okay, grant you that, grant, grant, grant, grant, the trial judge that. I'm not arguing it, I'm not arguing that. What I am saying though, is the confession supposedly that he made, the cooperation he made, the consent that he signed relative to the search in the house, was right after ten policemen rushed into the house and broke down the door. I don't think that's a valid consent, so that goes along with that same issue, your honor. Oh no, it was a protective search, it was not just taken at that point, was there? No, there wasn't. And that there's cocaine lying on the floor in the garage. There was cocaine lying on the floor, yes, your honor. And so a protective search seems to be very valid at that point, wouldn't it be? I've had this tendency to interrupt people for 50 years, and I apologize. The fact of the matter is, it's a protective search, but the protective search was not justified. They were in the garage, they had ten officers there, it would have been simply, it would have been very easy to go get a search warrant for that house, and they didn't get it, and the question is, did they have a right to go in that house? Did they have a right to go in the house? And then is the statement he makes, following ten policemen breaking down the door in his house, is that voluntary? And those are my issues, I think. Let me just, Mr. Jensen, I appreciate the time limitations and I'll give you time for rebuttal, but I'd like to return to what Judge Rovner initiated with her inquiry, because it seems to me everything flows from that, and excepting for the moment that the judge has made a credibility finding on what the officer found, what about this, the cartilage issue? In other words, as Judge Rovner said, the door is open. Would they need a warrant, is that your position? Yes. At that point? Yes, they were in the garage, there was a locked house, there was no evidence there was anything in the house, there was no evidence that there was anything in the house that was dangerous. No, I mean, are you saying they need a warrant, let's say, just to approach the garage? Well, I thought they did, but Judge Derjagin, depending on how I see the facts of this case, I believe they needed a warrant to approach the garage. Well, yes. So you're saying there was no observation by any officer of a possible illegal transaction which would justify entry into the garage? Based on my assessment of credibility of that police officer, and my assessment of the impeachment of that police officer, I do not believe that there was any reason for them to go into the garage, they couldn't legally come into the garage, they could have waited until you left, or whatever. Once in the garage, I don't believe they had a right to go in the house. That's essentially, and there was no finding of fact that they ran through the house, I think that's important. I think I ran through my time, thank you. Thank you, Mr. Jensen. You may have the two minutes for rebuttal. Okay, thank you. Ms. McIntyre, if there's any additional issues. I don't think you want to go first. No, you have to climb up on it now. Be careful what you wish for. Thank you so much. You're welcome. Good morning, my name is Sherry Mecklenburg and I represent the United States. The district court did not clearly err in holding first that the agents did not need a warrant to enter the garage, seize the evidence that was in plain view, and arrest the defendant. The district court also did not clearly err in finding that the defendant's consent to search the house was voluntary. By the way, was that missing drug evidence ever found? Oh, the actual, the box. The drugs were still in the box, but the box was not found, but we did present pictures of it. Right, right, right. We don't know what happened. I don't, Your Honor. There were multiple agencies working on this and when we went to find the box, it was not there. It was not inventoried properly. You know, one of the requirements for the plain view doctrine is that the incriminating evidence, the incriminating nature of the evidence must be immediately apparent. This one seems a little weak in this case because the factual account in your brief is, I'm going to quote, the box fell to the ground at which time Officer Mitchum saw a rectangular shaped white object wrapped in plastic fall out of the box. Then you discuss in the brief how, based on his experience, he recognized that this object was drugs. Is the rectangular object wrapped in plastic enough, or is it the accompanying background about soda that made it allegedly immediately apparent that these were drugs? It was the total circumstances, Your Honor. As you know, the agents had been following Mr. Soto, saw him discard certain drug packaging, knew that the canine had hit positively to that packaging for drugs, and then they followed Mr. Soto to Mr. Contreras' garage where they saw Mr. Soto moving a box toward Mr. Contreras' car. The object fell out of the box and the officer testified that, based on his training and experience, he recognized it to be narcotics. The district court found that testimony to be credible. A lot of items are rectangular and white, a loaf of bread. Yes, Your Honor, but the district court, the officer testified that this looked to him to be a kilo of some sort of narcotics. Box of shoes. Well, he testified that it looked like the cookie tin. Well, I think he knew the difference between the narcotics and the loaf of bread, and if you accept the district court's findings of credibility, then the officer's credibility is that he recognized it to be narcotics. And under the circumstances, Your Honor, under the circumstances of which he was watching, it would be highly unlikely that Mr. Soto would be to Mr. Contreras' car in the garage. As far as the district court's finding on the consent issue, the district court did not clearly earn finding that the defendant had voluntarily consented to the search of his house. The agents did not need a warrant to get into the garage under the plain view doctrine. The agents did not need a warrant to conduct the protective sweep. There was no evidence in the record was that they had conducted a valid protective sweep, that it had taken less than one minute, and that they had searched only for people, not for any items of evidence, and that in fact they had not recovered any evidence during that sweep. After the sweep was over, that's when they brought the defendant into the house, and as the district court noted under the totality of the circumstances, the agents brought the defendant into the house, removed his cuffs, then brought him from his kitchen to his dining room, read him his Miranda rights twice, once in Spanish and once in English, and then asked him if he would sign the consent to search. The district court noted that he was asked only once to sign, and further the district court noted that even before any of this happened, while they were still in the garage, the defendant voluntarily offered to cooperate with the police and said that he cooperated previously with them. Did he say something about previously cooperating with the police? Pardon me? Did he say something about previously cooperating? Yes, he had. Ms. Meckler, you relied pretty heavily on Connor, did you not? I do, Your Honor. I think we have the same garage situation. Similar, Your Honor. I understand that one was a residence, and I believe Connor was a business, but under the fact, the legal application of Plain View Doctrine, when the police are in a place that they're lawfully entitled to be, and they see something in plain view, they are entitled to enter that area, seize the evidence, and arrest the defendant. It appeared, at least in the district court, and also here, the defendant is not arguing against the operation of the Plain View Doctrine, if the facts are as the district court accepted them. The defendant is instead arguing that the facts are not what the district court accepted. Well, so you're saying it's the same as if this occurred on the porch? If there was a porch, if they saw this on a porch, they could go in the house, right? Well, in that circumstance, Your Honor, I believe there would be a higher expectation of privacy if there's a closed house. This is an attached garage, right? Yes, Your Honor, with a wide open door to the I appreciate that, but I'm just trying to see the sweep of the curtilage here for purposes of cases after this. Yes. So a rear patio lets you go in the house, you know? I believe, Your Honor, in that case, that they probably would be aware of it. You're smoking marijuana in the patio. Inside the house, Your Honor? No, a patio attached right behind the house, a brick patio right behind the house, you know, so many suburban houses, this doesn't have to be one, but we have that, and the patrol officer, you know, smells, he's trained, and they're partying, or grilling, and partying, and smoking on the patio. So where do we go with that? Make an arrest? I would advise agents in that case to get a warrant, Your Honor, because they cannot actually see what is happening. They would not be able to see until they actually entered the curtilage of the house. It's my observation that that wasn't a commercial cigarette that was being smoked. Then I would still suggest that the officers get a warrant if they plan to go in the house, because I believe the expectation of privacy is different between the house and a rear, even a rear patio attached to the house that's surrounded by the backyard, versus a garage that is open to the street. On a weekend in any part of suburbia, a fair number of garages are open, right? Yes, Your Honor. So, you know, they're mowing the lawn and don't close the garage door because they want to return in 15 or 20 minutes. That's true, Your Honor, I assume. So you should have no attached garage because you left it open and your teenage son is smoking marijuana in that garage. That is true, Your Honor. Yeah, you would think they need a warrant for that, you would say, to go in the house. To go inside the house? Yes, Your Honor, because there's a different expectation of privacy, but in an open garage? That's what I'm presenting you with, an open garage. I mean, the government is not having all four, not that you are required to, you don't have an all fours case here. I mean, you don't have a case, Connor is favorable to you in one sense, but I think the commercial setting versus the private residence is something we ought to take note of. That's true, Your Honor, but there are also private residence cases that apply the Plainview Doctrine. Well, why couldn't you have gotten a warrant for the house once you made the arrest in the garage? Your Honor, we could have gotten a warrant because the defendant gave his voluntary consent, we did not need a warrant. Well, that's a voluntary consent that's under interesting circumstances, where he's aware that contraband has just been found in his garage. I suspect he did not have as much sophisticated reflection as we all are having this morning on what reasonable show of force here. I'm just looking at a situation, multi-agency, been following the case for a while, could easily have had a magistrate on duty ready for this one, right, because they anticipated a drug deal going down in that garage or at least that's what was happening. I believe, Your Honor, that if the consent had not been given, that would have been the situation, but this is more like the Taylor case where the protective sweep does not constitute coercion. I see that my time is up. If you have no further questions at this time, I will ask that for the foregoing reasons, the court affirm the defendant's conviction. Thank you. Thank you. Mr. Jensen. Your Honors, simply put, the facts of the matter in this case basically, I think, militate to their not going into the house. Simply put, ten people coming to the house without the person here knowing that it's a protective search and an immediate, almost immediate consent is not valid. And going back to the first issue, the fact of the matter is, and I think I want to make it perfectly clear, I know I said it, but the fact is the box, the bag, the tape that we show that would indicate that this wasn't broken, all are missing, in I stand for questions, if not... Apparently not. Thank you, Mr. Jensen. Thank you, Ms. Mecklenburg. The case is taken under advisement and the court will proceed to the...